1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10
11  SARAH DEL MONTE, *et al.*,            )   Civil No. 06cv872-L(WMc)
                                          )
12              Plaintiffs,               )   **ORDER GRANTING IN PART AND
                                          )   DENYING IN PART DEFENDANTS'
13  v.                                    )   MOTION FOR SUMMARY
                                          )   JUDGMENT** [doc. #32]
14  COUNTY OF SAN DIEGO, *et al.*,        )
                                          )
15              Defendants.               )
                                          )
16  ────────────────────────────         )

17          Defendants[1] move for summary judgment in the above-captioned case.  The motion has

18  been fully briefed and submitted on the papers without oral argument.  Having carefully

19  considered the matters presented, the Court enters the following order.

20                              **Background**

21          Plaintiffs bring this action under 42 U.S.C. § 1983 for alleged violations of their fourth

22  amendment rights, and state law claims for battery, assault, negligence, false arrest/false

23  imprisonment, intentional infliction of emotional distress and violation of California Civil Code

24  § 52.1.  Plaintiff Sarah Del Monte is the mother of plaintiff Jennifer Del Monte, who is the

25  mother of Kalo Grimsby.   Jennifer shares custody of her daughter, Kalo, with Kalo's father.

26

27          [1]      The named defendants include the County of San Diego, San Diego County
28  Sheriff's Department, Sergeant R. Webb, Sergeant B. McCauley, and Deputy B. Stevens
     (collectively "defendants")

1    Sarah and Jennifer live in the same home where Kalo stays when she is in Jennifer's physical

2    custody.  (Complaint at ¶ 9.)

3          Plaintiffs allege[2] that on December 11, 2004, Deputy Stevens of the San Diego Sheriff's

4    Department went to plaintiffs' home in response to Kalo's father's report that Jennifer was

5    violating a child custody order concerning the transfer of Kalo to her father.  (Complaint at ¶

6    10.)  Jennifer told Deputy Stevens that it was not yet time for the turnover of Kalo to her father,

7    and Kalo was ill and needed to remain at Jennifer's home.  *Id.* at ¶ 11.)  Jennifer showed Deputy

8    Stevens a note from Kalo's doctor and the applicable custody order.  Deputy Stevens showed

9    Jennifer the later-dated note from the same physician.  After some discussions, Jennifer was

10   handcuffed and placed in a police car.  (*Id.* at 12.)  Deputy Stevens went back to the house and

11   told Sarah to prepare Kalo for her time with her father.  Sarah refused to get Kalo ready and

12   closed the door preventing Deputy Stevens' entry into the house.  *(Id.* at ¶ 13.)

13         Thereafter, Sergeant Webb entered the house and discussed the situation with Sarah.

14   Sergeant Webb showed Sarah the second note from Kalo's physician that indicated that she

15   could rest at either parent's house.  (*Id.* at ¶¶ 14, 15.)  Sarah then called 911.  While on the phone

16   with the 911 operator, plaintiffs allege that Sergeant Webb "took the phone and struck [Sarah]

17   on the side of her face and her ear with the phone.  He then grabbed her left arm, twisted it, and

18   banged her head against the desk numerous times.  SARAH asked for help and for an

19   ambulance.  However, her requests were ignored."  (*Id*. at 16.)

20         Deputy Stevens and Deputy Silva[3] came into the room when Sergeant Webb handcuffed

21   Sarah, who was then transported to a police station where she alleges she requested an

22   ambulance, smelling salts and her medications that were left at her home.  Sarah was cited for

23   violation of California Penal Code section 148(a)(1), resisting, delaying or obstructing a peace

24   officer.  She was then released from custody.  (*Id.* at ¶¶ 20, 21.)  Sergeant Webb told Sarah he

25   would take her to the hospital but she refused.  (*Id*. at ¶23.)   Shortly after arriving home, Sarah

26

27         [2]      The recital of facts comes exclusively from the unverified complaint filed April 13,
     2006.

28         [3]      Deputy Silva is not a named defendant in this action.

1   went to Scripps Memorial Hospital Encinitas Emergency Department for the injuries she

2   contends were inflicted by Sergeant Webb.  At the hospital, Sergeant McCauley, also of the San

3   Diego County Sheriff's Department, took Sarah's statement.  After Sergeant McCauley left

4   Sarah, she had "an acute coronary syndrome episode" and was admitted to the hospital.  (*Id.* at

5   ¶¶ 23, 24.)

6        Jennifer was arrested for violation of California Penal Code section 278.5(a), depriving

7   visitation of a child; and Penal Code section 166(a)(4), disobeying a court order.  These charges

8   were later dismissed.  Jennifer also contends that she was not permitted to take her medication

9   while she was in the police car.  (*Id.* at ¶ 21.)

10                              **Summary Judgment Standard**

11       Rule 56 of Federal Rules of Civil Procedure governs the parties' burdens on summary

12  judgment.  Rule 56(c) empowers the court to enter summary judgment on factually unsupported

13  claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every

14  action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is

15  appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits

16  show that there is no genuine issue as to any material fact and that the moving party is entitled to

17  judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Arpin v. Santa Clara Valley*

18  *Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When a defendant moves for summary

19  adjudication of plaintiff's claims, as is the case here, the moving party can meet its burden by

20  pointing out the absence of evidence from the nonmoving party.  *See Celotex*, 477 U.S. at 325;

21  *see also Garneau v. City of Seattle*, 147 F.3d 802, 807 (9th Cir. 1998).  If the movant meets his

22  burden, the burden shifts to the nonmovant to show summary adjudication is not appropriate.

23  *Celotex*, 477 U.S. at 317, 324.  The nonmovant must go beyond the pleadings to designate

24  specific facts showing there are genuine factual issues which "can be resolved only by a finder

25  of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty*

26  *Lobby, Inc.*, 477 U.S. 242, 250 (1986).

27       A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury

28  could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  "Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  When ruling on a summary judgment motion, the court cannot engage in credibility determinations or weighing of the evidence; these are functions for the jury. *Anderson*, 477 U.S. at 255; *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003).  The court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

## Discussion

### 1.      42 U.S.C. § 1983 Claims

#### a.      Sarah's Claims for Wrongful Arrest and Excessive Force

Defendants argue that Sarah stipulated to probable cause for her arrest but she contends only her attorney agreed that there was probable cause.  Sarah has never challenged the stipulation in the state court and doing so here is not appropriate.  As a result, there can be no claim for wrongful arrest based upon lack of probable cause.  Although plaintiffs argue, without legal support, that Sarah should not be required to adopt her attorney's statement of agreement concerning probable cause, they also contend that her excessive force claim remains viable.  Defendants do not argue otherwise:

> Although Sarah Del Monte may not allege in this section 1983 action that her arrest in this case lacked probable cause (because if she did so and prevailed at trial, her criminal case stipulation would be invalidated), *she may still allege that excessive force was used against her before, during, or after her arrest.*

(Reply memo. at 3 (emphasis added)).

Because of the stipulation as to probable cause in the state court criminal case, plaintiffs'

1   claim based upon wrongful arrest must be dismissed with prejudice.

2        Defendants do not argue that the excessive force claim is included in their motion for

3   summary judgment; therefore, the Court make no finding as to this claim.  But to the extent the

4   parties believe Sarah's excessive force claim was presented, defendants' motion for summary

5   judgment is denied without prejudice.

6                   **b.    Jennifer's Allegations**

7                        **1.    Wrongful arrest**

8        Plaintiffs contend Deputy Stevens did not have probable cause to arrest Jennifer because

9   she was in proper compliance with the Family Court Custody Order and his interpretation of that

10  Order was wrong.  An arrest is valid if it is supported by probable cause.  *United States v.*

11  *Hillison*, 733 F.2d 692, 697 (9th Cir.1984); *United States v. Bernard*, 607 F.2d 1257, 1265 (9th

12  Cir.1979).  In attempting to show Deputy Stevens' did not have probable cause to arrest Jennifer,

13  plaintiffs' point to subsection H of the Custody Order that provides  "[t]he custodial parent shall

14  give the non-custodial parent as much notice as is practical in the event that a child is unable to

15  go with the other parent because of illness."  (Plfs' memo at 12, quoting Exh. 3, p. 4 of 7,

16  subparagraph H.)  Jennifer also had a note from Kalo's physician that stated Kalo was to stay at

17  home while she recovered from an upper respiratory illness.  (Dfts' Exh. 6, December 8, 2004

18  physician note.)  Plaintiffs argue that "[c]learly the Court Order allowed the sick child to remain

19  with JENNIFER, and therefore it was reasonable in a light most favorable to JENNIFER for her

20  to believe that the child was too [sic] stay at home with her."  *Id.*  But Deputy Stevens' had a

21  second, subsequent note from Kalo's doctor stating that the child could be with either parent

22  during her recovery.  Deputy Stevens had a lawful court order and a physician's note that

23  indicated Kalo was able to be transferred to her father's custody.

24       Plaintiffs' belief in the correctness of their own interpretation of the court order is not the

25  applicable test for finding a lack of probable cause.  "Probable cause exists when, under the

26  totality of the circumstances known to the arresting officers, a prudent person would have

27  concluded that there was a fair probability that [the defendant] had committed a crime."  *United*

28  *States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992) (citation and quotation marks omitted).

                                        5                                       06cv872

1    Here, Deputy Stevens was presented with a custody order that Jennifer concedes was
2    valid.  Deputy Stevens also had two notes from Kalo's doctor – the later of which indicated Kalo
3    could rest with either her mother or her father.  A reasonably prudent person could conclude that
4    Jennifer was in violation of the lawful court order to transfer physical custody of Kalo over to
5    her father at 9:00 a.m.   The facts given to Deputy Stevens provided probable cause to find that
6    Jennifer was engaged in a felony by withholding a child from a lawful custodian and thus
7    entitling him to arrest her.  *See* CAL. PENAL CODE § 278.5(a).  Also, Deputy Stevens had
8    probable cause to believe Jennifer was in criminal contempt for willful disobedience of the terms
9    of a lawful court order.  *See* CAL. PENAL CODE § 166(a)(4).  Jennifer's arrest was supported by
10   probable cause and therefore, was not wrongful.

11       Defendants further contend that Deputy Stevens is entitled to qualified immunity for
12   Jennifer's arrest.  Law enforcement officers enjoy qualified immunity from liability for civil
13   damages as long as their conduct "does not violate clearly established statutory or constitutional
14   rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800,
15   818 (1982).  The rule of qualified immunity "'provides ample protection to all but the plainly
16   incompetent or those who knowingly violate the law.'"  *Burns v. Reed*, 500 U.S. 478, 495 (1991)
17   (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  In *Saucier v. Katz*, 533 U.S. 194 (2001),
18   the United States Supreme Court set forth a particular sequence of questions the court must
19   consider when determining whether qualified immunity exists.  *Saucier*, 533 U.S. at 204.  First,
20   the court considers the threshold question:  "[t]aken in the light most favorable to the party
21   asserting the injury, do the facts alleged show the officer's conduct violated a constitutional
22   right?"  *Id*. at 201.  If no constitutional right was violated and if the facts were as alleged, the
23   inquiry ends and defendants prevail.  *See id.*  If, however, "a violation could be made on a
24   favorable view of the parties' submissions, the next, sequential step is to ask whether the right
25   was clearly established."  *Id.*  The relevant inquiry in determining whether a right was clearly
26   established is whether it would be clear to a reasonable officer that his or her conduct was
27   unlawful in the situation he confronted.  *Id*. at 202.  *Saucier* further noted that second inquiry
28   "must be undertaken in light of the specific context of the case, not as a broad general

06cv872

1  proposition." *Id*. at 201.

2      Because there was probable cause supporting Jennifer's arrest, there is no constitutional

3  right that has been violated.  As a result, the Court need not consider the second prong of the test

4  and Deputy Stevens is entitled to qualified immunity.

5                          **2.      Excessive Force**

6      To the extent plaintiff Jennifer alleges a claim based upon excessive force, plaintiffs have

7  come forward with no evidence to show that any force was used against her.  In her deposition

8  when asked if Deputy Stevens used any force on her at the time he put her in handcuffs and lead

9  her outside, she answered, no.  (Def.'s Lodgments, Exh. 3 at p.  74.)  Jennifer also testified that

10  she suffered no physical injuries as a result of the incident.  (*Id.* at 50.)   Further, plaintiffs have

11  not addressed Jennifer's excessive force claim in their opposition which appears to be a consent

12  to the granting of defendants' motion for summary judgment on this claim.

13                   **c.      *Monell* Liability of County of San Diego**

14      The complaint includes a claim against the County of San Diego based upon the federal

15  civil rights statute, 42 U.S.C. § 1983.  A public entity, as compared to an individual, may be

16  liable under this statute only when one of its policies or customs has caused the constitutional

17  harm.  *Monell v. New York City Dep't. Soc. Serv.*, 436 U.S. 658, 691 (1978).  Defendants argue

18  that they are entitled to summary judgment on this claim on the ground that plaintiffs have failed

19  to articulate the requisite policy or custom that allegedly caused a violation of plaintiffs' civil

20  rights.  Plaintiffs appear to have abandoned this cause of action based on their lack of response

21  in their opposition to the motion for summary judgment.  Accordingly, the Court will grant

22  defendants' motion for summary judgment on plaintiffs' second cause of action.

23                   **2.      State law causes of action**

24      Defendants contend that under California Government Code § 945.6,[4] plaintiffs missed

25  the filing deadline to bring a civil complaint after the rejection of their claims The incident at

26  _____

27      [4]      Government Code section 945.6 requires "any suit brought against a public entity"
   to be commenced no more than six months after the public entity rejects the claim. GOV. CODE,
28  § 945.6(a)(1).  A civil action is "commenced" by filing a complaint with the court. CODE CIV.
   PROC., § 411.10.

1   issue occurred on December 11, 2004.  Plaintiffs submitted their claims to the County of San

2   Diego on June 9, 2005 and their claims were rejected on July 26, 2005.  (Def. Exh. 10,

3   Kapualani B. Brown Decl. at ¶¶ 3-6.)   The County's letter giving notice of the rejection of their

4   claims included a warning:

> Subject to certain exceptions, you have only six (6) months from the date this
> notice was personally delivered or deposited in the mail to file a court action on
> those causes of action recognized under the California Tort Claims Act.  See
> Government Code Section 945.6.

8   (Defs. Exh. 10-A.)

9        Based upon the notice of rejection of claims, plaintiffs had until January 26, 2006 within

10  which to file a civil action against the County of San Diego.  Plaintiffs complaint was not filed

11  until April 13, 2006, which is untimely under Government Code 945.6(a)(1).  Plaintiffs argue,

12  however, that the San Diego Sheriff's Department July 12, 2005 letter stated that it was in the

13  process of investigating their claims and its September 2, 2005 letter provided that  "[t]his

14  correspondence shall constitute notification that information obtained in the investigation has

15  resulted in the disposition of 'Unfounded.'"  (Ptfs' Exhs. 5 at 1, 7 at 1.)   As noted above, the

16  County's Notice of Rejection of Claims letter was dated July 26, 2005, and therefore, according

17  to plaintiffs, "the County's rejection [of their claims] was illegitimate and in bad faith since the

18  County Sheriff had not even finished with the investigation into the matter."  (Opp. at 15.)  In

19  other words, plaintiffs suggest that the investigation by one entity has a direct impact on the

20  decision-making process of another entity and the timing for filing a civil complaint under

21  Government Code 945.6.  Plaintiffs have provided no authority for this proposition.

22       Plaintiffs also contend that the City of Encinitas sent a Notice of Rejection of Claims

23  letter dated October 17, 2005.  Apparently, plaintiffs believe that this last letter of rejection of

24  claims served to extend the six-month time period for filing a civil complaint with respect to the

25  County of San Diego and the San Diego County Sheriff's Department.  California Government

26  Code § 945.6(a)(1) does not provide for such an extension against separate and distinct entities

27  such as the County of San Diego, the San Diego County Sheriff's Department and the City of

28  Encinitas.  As a result, a plaintiff wishing to sue a particular governmental entity must file a

1  claim with that entity and if the claim is rejected, compliance with California Government Code

2  § 945.6 with respect to that entity is required.  The rejection of claims by one entity has no

3  bearing on the filing deadlines of other entities.  Nor does the investigation by one entity impact

4  the time for filing a civil action against another entity.  Because plaintiffs failed to meet the

5  deadlines for filing a civil action under Government Code § 945.6 based upon the rejection of

6  their claims by the County of San Diego and the San Diego County Sheriff's Department,

7  defendants are entitled to summary judgment on all of plaintiffs' state law claims.[5]

8        **3.      Dismissal of Kalo**

9        Defendants argue that Kalo, as a minor, must have a guardian ad litem in order to

10  prosecute any claims she may have – a proposition plaintiffs do not dispute.  Instead, plaintiffs

11  state that even though Kalo does not have a guardian ad litem currently, one will be requested.

12  To date, such a motion has not been made.  The Court therefore will grant defendants' motion

13  without prejudice.

14        **4.      Intentional infliction of emotional distress**

15        Because all of plaintiffs' state law claims are subject to dismissal as being untimely under

16  Government Code § 945.6, plaintiffs' claim for intentional infliction of emotional distress is also

17  dismissed.  Additionally, plaintiffs expressly waived any rights to emotional distress claims.

18  (Dfts' Lodgment, Exh. 11, Letter dated November 21, 2007 from plaintiffs' counsel, Joseph H.

19  Low IV.)

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26

27        [5]      As noted above, plaintiffs' state law claims include: battery; assault; negligence;

28  false arrest/imprisonment; intentional infliction of emotional distress; and California Civil Code § 52.1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Conclusion**

For the reasons set forth above, defendants' motion for summary judgment is **GRANTED in part and denied in part**.  Defendants' motion is denied with respect to plaintiff Sarah Del Monte's 42 U.S.C. § 1983 claim of excessive force.  In all other respects, defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**

DATED:  August 12, 2008

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE, JR.
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

10

06cv872